CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
VANESSA E. RODRIGUEZ (349425)
Vanessa.Rodriguez@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>  Debtor.<br><br>———————————————<br>RICHARD A. MARSHACK, Chapter 11 Trustee,<br><br>  Plaintiff,<br><br>v.<br><br>NEW HORIZON FINANCE LLC, a Delaware limited liability company,<br><br>  Defendant. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:24-ap-01017-SC<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |

1

|  |  |
|---|---|
|  | **(5) AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE; AND** |
|  | **(6) TURNOVER** |
|  | Date: June 12, 2024<br>Time: 11:00 a.m.<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, California 92701<br>Judge: Hon. Scott C. Clarkson |

For his *First Amended Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; and (6) Turnover* (the "FAC"), plaintiff Richard A. Marshack, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title

2

11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court").

2. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3. Defendant is hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5. Plaintiff Richard A. Marshack is the duly appointed, qualified, and acting Chapter 11 Trustee of Debtor's Estate.

6. Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7. Defendant New Horizon Finance LLC ("Defendant") is, and at all material times represented that it was, a foreign limited liability company, existing, and under the laws of the State of Delaware.

8. Defendant may be served via first class mail postage prepaid upon its registered agent for service of process, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## GENERAL ALLEGATIONS

**A.    The Bankruptcy Case**

9. On March 20, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

10. After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44], the Court entered the *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58] on May 4, 2021, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

11. Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, the Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Bankr. Docket No. 65].

12. The Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

13.  Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.  LPG**

14.  LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

15.  The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

16.  The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

17.  In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

18.  Pursuant to applicable legal and ethical rules, the monthly payments made by the consumers to LPG should have been held in trust until LPG incurred costs related to the consumer's file or otherwise earned the fee pursuant to applicable law.

19.  LPG did not place consumers' monthly payments in trust.

20.  In addition, in order to continue to obtain consumers to represent, LPG contracted with marketing companies, who engaged in illegal capping, to refer customers to LPG.

21.  The marking affiliate marketed in a manner to capture the potential consumer and refer same to LPG.

22.  The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

23.  In exchange for the consumers, LPG agreed to pay the marketing affiliates a percentage the monthly payments made by the consumers to LPG.

24. In addition, because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flow. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

25. Many of the documents executed in connection with this financing describe the transactions as account receivable purchase agreements.

### C. Defendant

26. Defendant was one of the marketing affiliates Debtor entered into an affiliate agreement.

27. Debtor paid Defendant a portion of the monthly payments received from consumers referred by Defendant to Debtor.

28. Defendant is also one of the parties Debtor entered into an accounts receivable purchase agreements. Pursuant to these agreements, Debtor sold a portion of the income stream from the monthly payments received to Defendant.

#### i. Affiliate Agreement

29. On or about August 17, 2022, Debtor entered into an affiliate agreement with Defendant (the "Affiliate Agreement"). A true and accurate copy of the Affiliate Agreement is attached as **Exhibit A.**

30. The Affiliate Agreement provides Defendant "owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG." *See* **Ex. A**.

31. Pursuant to the Affiliate Agreement, Defendant generated leads consisting of consumers interested in the legal services offered by LPG and referred those consumers to Debtor. *See* **Ex. A**.

32. Defendant went so far as to assist with the execution of an engagement letter with the consumer. *See* **Ex. A**.

33. Pursuant to the Affiliate Agreement, Debtor agreed to pay Defendant as follows:

6

> LPG shall pay 65% per file for each file that Affiliate places with LPG, not counting the monthly maintenance fee of $96.38, which LPG shall retain to cover administrative costs for each file. LPG shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days. If any consumer cancels LPG's services, or demands a refund for payment for such services, or both, then LPG shall be solely responsible [sic] for such cost and Affiliate shall not have to share such expenses.

See **Ex. A**.

34. The Affiliate Agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. CAL. BUS. & PROF. CODE § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

35. Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133 (1952), overruled, *Fomco,*

*Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

36.  Because the Affiliate Agreements violates California law, it is not supported by valid consideration.

37.  Unlawful consideration is that which is "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

      **ii.   Accounts Receivable Purchase Agreements and Asset Purchase Agreement**

38.  On or about August 31, 2022, Defendant entered into an Accounts Receivable Purchase Agreement with OHP-LPG, LP ("ARPA 1"). A true and accurate copy of ARPA 1 is attached as **Exhibit B.**

39.  On or about September 14, 2022, Defendant entered into an Accounts Receivable Purchase Agreement with PurchaseCo80, LLC ("ARPA 2"). A true and accurate copy of ARPA 2 is attached as **Exhibit C.**

40.  On or about September 22, 2022, Defendant entered into an Asset Purchase Agreement with PurchaseCo80, LLC ("APA"). A true and accurate copy of APA is attached as **Exhibit D.**

41.  On or about October 6, 2022, Defendant entered into an Accounts Receivable Purchase Agreement with Marich Bein LLC ("ARPA 3"). A true and

accurate copy of ARPA 3 is attached as **Exhibit E.**

42. On or about November 7, 2022, Defendant entered into an Accounts Receivable Purchase Agreement with Debtor ("ARPA 4"). A true and accurate copy of ARPA 4 is attached as **Exhibit F.**

43. On or about November 17, 2022, Defendant entered into an Accounts Receivable Purchase Agreement with Debtor ("ARPA 5"). A true and accurate copy of ARPA 5 is attached as **Exhibit G.**

44. On or about January 6, 2023, Defendant entered into an Accounts Receivable Purchase Agreement with Debtor ("ARPA 6"). A true and accurate copy of ARPA 6 is attached as **Exhibit H.**

45. On or about January 6, 2023, Defendant entered into a second Accounts Receivable Purchase Agreement with ProofPositive LLC ("ARPA 7"). A true and accurate copy of ARPA 7 is attached as **Exhibit I.**

46. On or about February 28, 2023, Defendant entered into an Accounts Receivable Purchase Agreement with Debtor ("ARPA 8"). A true and accurate copy of ARPA 8 is attached as **Exhibit J.**

47. ARPA 1, ARPA 2, APA, ARPA 3, ARPA 4, ARPA 5, ARPA 6, ARPA 7, and ARPA 8 are referred to collectively hereinafter as the "ARPA Agreements."

48. Pursuant to the ARPA Agreements, Defendant sold Debtor the stream of monthly payments from consumers that were supposed to be held in trust until earned.

49. By entering into the ARPA Agreements, Debtor and Defendant violated California law by selling unearned legal fees or funds there were supposed to be used for the benefit of consumers.

50. The effect of the ARPA Agreements was to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes*

9

*Hot Springs Co.*, 113 Cal. App. 479 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

51. Because the ARPA Agreements violates California law, it is not supported by valid consideration.

52. Unlawful consideration is that which is "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### iii. Preference Letter

53. On or about September 15, 2023, Trustee sent a preference letter to Defendant (the "Preference Letter"). A true and accurate copy of the Preference Letter is attached as **Exhibit K.**

54. The Preference Letter discussed certain transfers from Debtor that were made to Defendant within the 90-day period prior to the Petition Date. The transfers were listed on the attached Preference Transfer Schedule showing the date and amount, according to Debtor's books and records, of each transfer or other payment

Case 8:24-ap-01017-SC   Doc 10   Filed 03/28/24   Entered 03/28/24 13:37:36   Desc
Main Document    Page 11 of 20

("Preference Transfer Schedule"). Trustee requested payment of the total amount due under the Preference Transfer Schedule that amounted to $236,541.14, in exchange for a waiver and release from all claims that could be asserted by Trustee against Defendant pursuant to 11 U.S.C. §§ 547 and 550.

55. Based on the information available to Trustee and considering the nature of the relationship between Debtor and Defendant, no potential defenses were identified that could reduce Defendant's liability for the preference payments. Consequently, Defendant was requested to provide any facts and valid defenses that could substantiate its position and potentially mitigate or prevent some or all of the transfers made by Debtor.

56. On or about October 25, 2023, Defendant responded to the Preference Letter ("Response Letter"). A true and accurate copy of the Response Letter is attached as **Exhibit L.**

57. The Response Letter discussed Defendant's winding down of its business since approximately March of 2023. Defendant stated that at the time LPG went into bankruptcy, LPG still owed it about one million dollars in overdue fees for services it provided to LPG. Defendant forgo submitting a claim for the amount owed so it could move forward with winding down.

58. Defendant claimed it only had approximately $16,000 in cash and no other assets of value. Defendant attached a copy of its bank account demonstrating such claim.

59. Due to its limited resources, Defendant stated it could not provide a meaningful settlement. Defendant's owners proposed a settlement amount that was substantially less than the $236,541.14 specified in the Preference Transfer Schedule. The proposed settlement was intended to address and resolve all claims against Defendant, accompanied by a comprehensive general release for both Defendant and its owners.

/ / /

60. Trustee did not agree to such settlement terms, and has yet to receive any payment from Defendant pursuant to the Preference Letter.

### D. Payments to Defendant

61. From September 2022 to February 2023, Debtor paid Defendant the sum of at least $833,197.27, subject to proof at trial (the "Transfers"). A true and accurate list of the payments made by Debtor to Defendant is attached as **Exhibit M.**

62. $284,876.66 of the Transfers from Debtor to Defendant occurred during the 90-day preference period (the "Preference Transfers"). A true and accurate list of the payments made during the Preference Transfers is attached as **Exhibit N**.

### E. LPG's Prepetition Creditors

63. On Debtor's Schedule D [Bankr. Docket No. 33], Debtor listed three secured creditors—(a) Diverse Capital, LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000 (together, the "Secured Creditors")—with secured claims totaling $6,274,810.

64. In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, the "Priority Unsecured Creditors").

65. Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt

Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, the "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, the "Prepetition Creditors").

## FIRST CLAIM FOR RELIEF

### Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

66. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

67. All or a portion of the Transfers occurred within the two years prior to the Petition Date.

68. On or after the date that such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

69. The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

70. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor, in order to continue to receive additional consumer referrals.

71. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell its accounts receivable to Defendant, which is illegal under California law.

72. The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

73. The Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

74. The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 73 as though set forth in full.

75. All or a portion of the Transfers occurred within the two years prior to the Petition Date.

76. On or after the date that such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

77. The Transfers happened while Debtor
    a. was insolvent or became insolvent was a result thereof;
    b. was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or
    c. intended to incur, or believed that it would incur, debts beyond its

14

ability to pay as such debts matured.

78. Because the referrals from Defendant to Debtor are illegal under California law, they are void and constitute unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the Transfers, Debtor received less than reasonably equivalent value in exchange for the Transfers.

79. Because the sale of the accounts receivable from Debtor to Defendant are illegal under California law, they are void and constitute unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the Transfers, Debtor received less than reasonably equivalent value in exchange for the Transfers.

80. The Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

### THIRD CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a) and 3439.07]**

81. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 80 as though set forth in full.

82. All or a portion of the Transfers occurred within the four years prior to the Petition Date.

83. On or after the date that such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

84. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor.

85. Because the referrals from Defendant to Debtor are illegal under

California law, they are void and constitute unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the Transfers, Debtor received less than reasonably equivalent value in exchange for the Transfers.

86. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell its accounts receivable to Defendant, which is illegal under California law. Because they are illegal under California law, they are void and subject to avoidance as fraudulent.

87. The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

88. At all relevant times, the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

89. Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

## FOURTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

90. The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 89 as though set forth in full.

91. All or a portion of the Transfers occurred within the four years prior to the Petition Date.

92. The Transfers happened while Debtor

      a. was insolvent or became insolvent was a result thereof;

      b. was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

      c. intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

93. Because the referrals from Defendant to Debtor are illegal under California law, they are void and constitute unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the Transfers, Debtor received less than reasonably equivalent value in exchange for the Transfers.

94. Because the sale of the accounts receivable from Debtor to Defendant are illegal under California law, they are void and constitute unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time of the Transfers, Debtor received less than reasonably equivalent value in exchange for the Transfers.

95. At all relevant times, the Transfers of Debtor's trust funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

96. Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

/ / /

/ / /

/ / /

17

## FIFTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Preferential Transfer to Defendant in Preference Period**

**[11 U.S.C. §§ 547, 550, and 551]**

97. The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 96 as though set forth in full.

98. The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the LPG to Defendant, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant.

99. The Preference Transfers happened while LPG was insolvent.

100. Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

101. As a result of the Preference Transfers, Defendant would be entitled to recover more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

102. In accordance with the foregoing, the Preference Transfers of the Statement is avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

/ / /

/ / /

/ / /

/ / /

/ / /

## SIXTH CLAIM FOR RELIEF

### Turnover of Estate Property Against Defendant

### [11 U.S.C. § 542]

103. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 102 as though set forth in full.

104. Defendant has possession or control over property of the Estate.

105. The Transfers are not of inconsequential value to the Estate.

106. The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

107. Accordingly, the Trustee is entitled to a judgment for turnover of the trust funds pursuant to 11 U.S.C. § 542.

## RESERVATION OF RIGHTS

108. Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendant, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1. Avoiding, recovering, and preserving the Transfers against Defendant;

**On the Fifth Claim for Relief:**

2. Avoiding, recovering, and preserving the Transfers against Defendant;

**On the Sixth Claim for Relief:**

3. Ordering Defendant to immediately turn over the Transfers;

**On All Claims for Relief:**

4. Awarding costs of suit incurred herein; and

5. Granting any other and further relief as the Court deems just and proper.

Dated: March 28, 2024

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/ Vanessa E. Rodriguez
    Yosina M. Lissebeck
    Vanessa E. Rodriguez
    *Special Counsel to Richard A. Marshack, Chapter 11 Trustee*